**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CAREPOINT HEALTH SYSTEMS INC. d/b/a JUST HEALTH FOUNDATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12534 (JKS)<br><br>(Jointly Administered) |
| PROVINCE FIDUCIARY SERVICES, LLC, solely in its capacity as Litigation Trustee of the CarePoint Litigation Trust,<br><br>Plaintiff,<br><br>v.<br><br>TRUELEARN, LLC,<br><br>Defendant. | Adv. Pro. No. Refer to Summons |

**COMPLAINT TO AVOID AND**
**RECOVER TRANSFERS PURSUANT TO 11 U.S.C.**
**§§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Province Fiduciary Services, LLC, as Trustee (the "Plaintiff" or "Trustee") of the CarePoint Litigation Trust (the "Trust"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Truelearn, LLC (the

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC; (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

"Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges the following upon information and belief:

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of CarePoint Health Systems Inc. d/b/a Just Health Foundation ("CarePoint") and its affiliated debtors listed in footnote 1 (collectively, the "Debtors") pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code").

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of Plaintiff's rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

3. To the extent one or more of the transfers to Defendant was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor to satisfy an obligation owed by a different Debtor, without the obligated Debtor transferring reasonably equivalent value to the paying Debtor in exchange, Plaintiff seeks, in the alternative, to avoid and recover such transfers as fraudulent transfers pursuant to sections 548 and 550 of the Bankruptcy Code.

## JURISDICTION AND VENUE

4. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The

underlying chapter 11 bankruptcy case is captioned *In re CarePoint Health Systems Inc. d/b/a Just Health Foundation, et al.*, Case No. 24-12534 (JKS).

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff states that it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue of the Debtors' chapter 11 cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

8. On November 3, 2024 (the "Petition Date"), each of the Debtors, other than IJKG Opco LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and an involuntary chapter 11 case was commenced against IJKG Opco LLC, as to which an order for relief was entered on November 6, 2024 (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are jointly administered for procedural purposes only under the above-captioned case.[2]

9. On April 17, 2025, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Seventh Amended Combined Disclosure Statement and Joint Chapter 11*

---

[2] D.I. 80; D.I. 147. Unless otherwise specified, all docket entry references relate to the main case, *In re CarePoint Health Systems Inc. d/b/a Just Health Foundation, et al.*, Case No. 24-12534 (JKS).

*Plan of Reorganization as Modified as of April 15, 2025* (the "Confirmation Order"),[3] confirming the *Seventh Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization as Modified as of April 15, 2025* (the "Plan"),[4] together with all supplements and exhibits thereto, including the Litigation Trust Agreement (the "Trust Agreement"),[5] which the Confirmation Order approved.[6] The Plan was confirmed as to all Debtors other than Garden State Healthcare Associates, LLC and New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (the "Practice Group Debtors").

10. The effective date of the Plan (the "Effective Date") occurred on May 22, 2025.[7] The Trust was established as of the Effective Date pursuant to the terms of the Plan, the Confirmation Order, and the Trust Agreement, and the Trustee was appointed as trustee of the Trust.[8]

11. Pursuant to Article X.C of the Plan and paragraph 33 of the Confirmation Order, all Litigation Claims, which include all Avoidance Actions (as defined in the Plan) arising under chapter 5 of the Bankruptcy Code, were transferred to and vested in the Trust on the Effective Date.[9] The Trust has the exclusive right and authority to investigate, commence, pursue, and settle the Litigation Claims, and the Trustee is the representative of the Debtors' estates pursuant to section 1123 of the Bankruptcy Code.[10] The Litigation Claims were expressly preserved for enforcement by the Trust and the Trustee.[11] This Complaint seeks to avoid and recover transfers

---

[3] D.I. 1168.

[4] D.I. 1154. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Confirmation Order, and/or the Trust Agreement.

[5] D.I. 730, Ex. A.

[6] Confirmation Order ¶ 29.

[7] D.I. 1285.

[8] Plan, Art. X.A; Confirmation Order ¶¶ 30, 32.

[9] Plan § 1.117.

[10] Plan, Art. X.I.1; Confirmation Order ¶¶ 32, 35.

[11] Plan, Art. IX.P; Confirmation Order ¶ 36.

made by Debtors whose Litigation Claims vested in the Trust under the Plan and does not assert any claims of the Practice Group Debtors.

**THE PARTIES**

12. Pursuant to the Plan, Confirmation Order, and Trust Agreement, Plaintiff was appointed as the Trustee and is authorized and has standing, among other things, to prosecute and settle all Litigation Claims under chapter 5 of the Bankruptcy Code, including this avoidance action.[12]

13. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtors.

**FACTUAL BACKGROUND**

14. As more fully discussed in the *Seventh Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement"),[13] the Debtors operated three city hospitals and affiliated entities, namely Bayonne Medical Center, Christ Hospital and Hoboken University Medical Center.

15. The Debtors' financial difficulties that led to the decision to file for chapter 11 bankruptcy protection are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Chapter 11 Cases is set forth in the Disclosure Statement and is incorporated herein by reference.

16. As described in the Disclosure Statement, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

17. Prior to the Petition Date, the Debtors, as hospital operators, maintained business

---

[12] *See supra* nn. 7, 9.

[13] D.I. 1154, Art. III.A.1.

relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services. The Debtors also regularly paid for services used to facilitate their business and hospital operations.

18. During the ninety (90) days before and including the Petition Date, that is, between August 5, 2024, and November 3, 2024 (the "Preference Period"), the Debtors continued to operate their business, including the transfer of money, either by checks, cashier's checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

19. Upon information and belief, during the course of their relationship, Defendant and one or more of the Debtors entered into agreements for the purchase of goods and/or services from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications, and/or other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than $10,766.00 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on **Exhibit A** attached hereto and incorporated herein by reference. Plaintiff is seeking to avoid all of the Transfers made by the applicable Debtor(s) to Defendant within the Preference Period.

20. On or about August 17, 2026, Plaintiff, through counsel, sent one or more demand letters (collectively, the "Demand Letter") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547(c) of the Bankruptcy Code and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiff could review the same.

21. Plaintiff also performed its own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the Debtors' books and records in Plaintiff's possession and identified that Defendant potentially has $0.00 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense, for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the Debtors' electronic books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this preliminary new value number is subject to adjustment. Additionally, section 547(c)(4)(B) provides that any potential new value must not be paid for by "an otherwise unavoidable transfer." To the extent that (i) there are any prepayments in the Preference Period paying such new value that are not subject to avoidance by Plaintiff, or (ii) Defendant successfully asserts affirmative defenses, including but not limited to the ordinary course of business defense or the contemporaneous exchange for new value defense, certain invoices may no longer be available for new value and the new value amount may be subject to reduction. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this new value.

22. Additionally, Plaintiff reviewed the books and records in Plaintiff's possession to examine whether historical payment records exist that may be used to analyze whether, and to what extent, Defendant may be able to assert the subjective ordinary course of business affirmative defense. However, the subjective ordinary course of business defense is an inherently factual endeavor, and payment history is only one factor. The presence of collection pressure, tightening of credit terms, a creditor's loss of credit insurance, and/or threats to stop shipments without payment can make even statistically ordinary payments unordinary. Certain information related to

these factors may only be in Defendant's possession, which Plaintiff is entitled to request during discovery. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to the ordinary course of business affirmative defense.

23. Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), including the review and evaluation described in the three immediately preceding paragraphs, Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

24. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period or that may be avoidable under other provisions of the Bankruptcy Code. It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by the Debtors to or for the benefit of Defendant or any other transferee, in accordance with the Bankruptcy Code and for the benefit of all creditors of the Debtors' estates. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revisions to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

25. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the

extent they are not inconsistent with allegations contained in this Count I.

26. As more particularly described on **Exhibit A**, during the Preference Period, the Debtor(s) made each Transfer to or for the benefit of Defendant in an aggregate amount not less than $10,766.00.

27. Each Transfer was made from the Debtor(s) and constituted a transfer of an interest in property of the transferring Debtor(s).

28. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) with the goods and/or services identified in this Complaint and in the Agreements, for which the Debtor(s) were obligated to pay following delivery in accordance with the Agreements.

29. Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) to Defendant.

30. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) to Defendant before such Transfer was made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s).

31. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

32. Each Transfer was made during the Preference Period.

33. As a result of each Transfer, Defendant received more than Defendant would have received if: (a) the Debtors' Chapter 11 Cases were cases under chapter 7 of the Bankruptcy Code; (b) the Transfers had not been made; and (c) Defendant received distributions on account of its

debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, and as described in the Plan and Disclosure Statement, the Debtors' liabilities exceed their assets such that the Debtors' unsecured creditors will not receive payment of their claims in full from the Debtors' bankruptcy estates.

34. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

**COUNT II**
**(Avoidance of Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(B))**

35. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with the allegations contained in this Count II.

36. In the alternative, to the extent one or more of the Transfers was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor to satisfy an obligation owed by a different Debtor without the obligated Debtor transferring reasonably equivalent value to the paying Debtor in exchange (the "Potentially Fraudulent Transfers"), the Debtor(s) making such Potentially Fraudulent Transfers did not receive reasonably equivalent value in exchange for such transfers.

37. Each Potentially Fraudulent Transfer was made during the Preference Period and therefore within two years before the Petition Date.

38. At the time of each Potentially Fraudulent Transfer, the Debtor making such transfer (a) was insolvent on the date of such transfer, or became insolvent as a result of such transfer; (b) was engaged, or was about to engage, in business or a transaction for which any property remaining with such Debtor was an unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

39. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

**COUNT III**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

40. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with the allegations contained in this Count III.

41. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and, in the alternative, the Potentially Fraudulent Transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code (collectively, the "Avoidable Transfers").

42. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

43. Accordingly, pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

**COUNT IV**
**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

44. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count IV.

45. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

46. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

47. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of

Defendant and/or its assignee, against Plaintiff or the Debtors must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

48. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief against Defendant:

A. On Counts I and II, judgment in favor of Plaintiff and against Defendant avoiding all of the Avoidable Transfers pursuant to sections 547(b) and 548(a)(1)(B) of the Bankruptcy Code;

B. On Count III, judgment in favor of Plaintiff and against Defendant directing Defendant to return to Plaintiff the amount of the Avoidable Transfers pursuant to section 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

C. On Count IV, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors or Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

D. Such other and further relief as this Court may deem just and proper.

Dated: November 1, 2026
Wilmington, Delaware

**AKERMAN LLP**

/s/ *Lucian B. Murley, Esq.*
Lucian B. Murley, Esq. (DE Bar No. 4892)
Stephen A. Smith (DE Bar No. 7456)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
(302) 596-9205
luke.murley@akerman.com
stephen.smith@akerman.com

-and-

**LAW OFFICES OF MITCHELL J. MALZBERG, LLC**
Mitchell Malzberg, Esq. (pro hac vice pending)
PO Box 5122
6 E. Main Street, Suite 7
Clinton, NJ 08809
(908) 323-2958
mmalzberg@mjmalzberglaw.com

*Co-Counsel to Plaintiff, Province Fiduciary Services, LLC, as Litigation Trustee of the CarePoint Litigation Trust*

# EXHIBIT A

Defendant: Truelearn, LLC

**Transfers During Preference Period**

| Debtor Entity | Transfer Typology | Check / Wire Number | Transfer Amount | Invoice Number | Invoice Date | Payment Date |
|---|---|---|---|---|---|---|
| IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center | Check | 0098005 | $5,028 | ORDER FORM #9259 | 04-15-24 | 08-13-24 |
| Hudson Hospital Opco LLC d/b/a CarePoint Health-Christ Hospital | Check | 00050516 | $5,738 | INV-9731 | 03-28-24 | 08-22-24 |
| | **Totals:** | **2** | **$10,766** | | | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CAREPOINT HEALTH SYSTEMS INC. d/b/a JUST HEALTH FOUNDATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12534 (JKS)<br><br>(Jointly Administered) |
| PROVINCE FIDUCIARY SERVICES, LLC, solely in its capacity as Litigation Trustee of the CarePoint Litigation Trust,<br><br>Plaintiff,<br><br>v.<br><br>TRUELEARN, LLC,<br><br>Defendant. | Adv. Pro. No. Refer to Summons |

**NOTICE OF DISPUTE RESOLUTION ALTERNATIVES**

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Bayonne Intermediate Holdco, LLC (7716); (ii) Benego CarePoint, LLC (2199); (iii) Briar Hill CarePoint, LLC ; (iv) CarePoint Health Management Associates Intermediate Holdco, LLC (none); (v) CarePoint Health Management Associates, LLC d/b/a CarePoint Health (3478); (vi) CarePoint Health Systems, Inc. d/b/a Just Health Foundation (6996); (vii) CH Hudson Holdco, LLC (3376); (viii) Christ Intermediate Holdco, LLC (3376); (ix) Evergreen Community Assets (1726); (x) Garden State Healthcare Associates, LLC (4414); (xi) Hoboken Intermediate Holdco, LLC (2105); (xii) Hudson Hospital Holdco, LLC (3869); (xiii) Hudson Hospital Opco, LLC d/b/a CarePoint Health-Christ Hospital (0608); (xiv) HUMC Holdco, LLC (3488); (xv) HUMCO Opco, LLC d/b/a CarePoint Health-Hoboken University Medical Center (7328); (xvi) IJKG, LLC (7430); (xvii) Just Health MSO, LLC (1593); (xviii) New Jersey Medical and Health Associates d/b/a CarePoint Health Medical Group (0232); (xix) Quality Care Associates, LLC (4710); (xx) Sequoia BMC Holdco, LLC (9812); (xxi) IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center (2063). The address for CarePoint Health Systems Inc. is 308 Willow Avenue, Hoboken, NJ 07030.

Court. The use of these services are often productive and effective in settling disputes. The purpose of this Notice is to furnish general information about ADR.

The ADR structures used most often are mediation, early neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral."

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests de novo review of an arbitration award, the judge will rehear the case.

Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.

Dated: November 1, 2026

/s/ Stephen L. Grant, Sr.________
Clerk of Court